[S. F. No. 22113. In Bank. Dec. 6, 1965.]

WEST VALLEY JOINT JUNIOR COLLEGE DISTRICT, Petitioner, v. C. R. TIMPANY, as County Superintendent of Schools, etc., Respondent.

Spencer M. Williams, County Counsel (Santa Clara), and Selby Brown, Jr., Deputy County Counsel, for Petitioner.

Thomas C. Lynch, Attorney General, and Elizabeth Palmer, Deputy Attorney General, as Amici Curiae on behalf of Petitioner.

Joan Symon Harrison for Respondent.

Joseph G. Schumb, Jr., di Leonardo, Blake, Kelly, Aguilar & Leal and Robert L. Blake as Amici Curiae on behalf of Respondent.

BURKE, J. — The question presented in this mandamus proceeding is whether the proceeds of the special tuition tax levied, under section 25541.5 of the Education Code,[1] by a

---

[1] Unless otherwise stated, all section references herein are to the Education Code.

school district during a school year may be used to pay for services performed during the prior school year under junior college interdistrict attendance agreements. We have concluded that such use of the special tax revenues is without authority in the law; accordingly, the writ sought by petitioner junior college district to compel respondent county superintendent of schools to approve and permit the proposed use will be denied.

Petitioner came into existence on July 1, 1963. During the 1963-1964 school year it entered into interdistrict attendance agreements with other junior college districts, as authorized by sections 10801 et seq. The agreements provided that junior college students residing in petitioner's district could attend junior colleges in the other districts, that in consideration therefor petitioner would pay a designated sum per student to such other districts, and that the payments would be made during the next (1964-1965) school year.

Petitioner's budget for the 1963-1964 school year included proposed special purpose expenditures totaling $1,647,500 for interdistrict attendance agreements and plant and equipment leases, of which it proposed to raise $729,310 by a special tax, as authorized by section 25541.5,[2] and the remainder by its general purposes tax rate. The special tax was accordingly levied to the extent of $0.185 (although under the statute it could have reached $0.341) and produced the $729,310, which became part of petitioner's interdistrict attendance fund (No. 75-63), sometimes herein termed the special tax fund. The

---

[2]Education Code, section 25541.5: "The maximum rate of tax of any junior college district and of any unified school district maintaining a junior college is hereby increased by such amount as will produce the *amount proposed to be expended* by the district *pursuant to* any *interdistrict attendance agreement* and is hereby increased by such amount as will produce the amount proposed to be expended by the district pursuant to any lease agreement for plant and equipment *as shown by the budget* as finally adopted by the governing board of the district *for the current fiscal year, less* any *unencumbered balances* remaining *at* the *end of* the preceding *fiscal year derived from the increase in the* rate of *tax* provided by this section.

"The increase provided by this section shall not exceed the rate of tax levied in the county pursuant to Section 20202 during the fiscal year next preceding the formation of the district for all purposes, or ten cents ($0.10) per each one hundred dollars ($100) of the assessed value of the property within the district, whichever is the greater.

". . . . . . . . . .

"*If at* the *end of* any school *year there remains* an *unencumbered balance derived from* the revenue of the *increase in tax* rate hereby provided, *such balance shall be used exclusively in the following* school *year for* the payment of any obligation incurred under the terms of an *interdistrict attendance agreement for such* school *year. . . .*" (Italics added.)

balance of the total budgeted for special purposes in 1963-1964 was raised by general purposes taxes. Petitioner's annual report to the county superintendent of schools, of "current liabilities on June 30, 1964" (i.e., the end of the fiscal year), lists the (apparently estimated) amount of $1,423,700 as a carry-over liability to pay "Other Tuition" debts, consisting primarily of those incurred for the 1963-1964 year under its interdistrict attendance agreements. As will be seen, the obligations under such agreements were not paid, however, until January 1965.

Meantime, for the 1964-1965 school year petitioner had prepared its budget to include $1,183,375 for proposed expenditures for 1964-1965 interdistrict attendance services, of which it proposed to, and did, raise $782,497 by a section 25541.5 special tax (again levying the special tax at less than the authorized rate). This $782,497 had likewise become a part of petitioner's interdistrict fund (No. 75-63) prior to the January 1965 payment for the 1963-1964 services, and when added to the $729,310 raised by the 1963-1964 special tax, made a total of $1,511,807 in that fund. In January 1965 petitioner then ordered that $1,401,183.11 be paid from such fund to other junior college districts for 1963-1964 interdistrict attendance services. Thus the payment for 1963-1964 services exceeded by $671,873.11 the $729,310 raised by the 1963-1964 special tax. Respondent county superintendent of schools thereupon caused a like amount ($671,873.11) to be transferred from petitioner's general purpose fund (No. 75-01) to its interdistrict attendance fund, thus bringing the payments and the two funds into conformity with petitioner's 1963-1964 budget. (See §§ 21101 et seq.)

By this mandamus proceeding petitioner seeks to compel respondent (1) to transfer the $671,873.11 back to petitioner's general fund (and out of the interdistrict attendance fund) so that it will be available for other purposes;[3] and (2) to examine and approve warrants drawn on the proceeds of the special tax to be levied during the 1965-1966 school year, which warrants are to pay the expenses of interdistrict attendance services performed during the previous (1964-1965) school year. (See § 21107.)[4]

---

[3]Such as establishing a special reserve fund for the accumulation of funds over a period of years for site acquisitions and improvements. (See §§ 21401 et seq.)

[4]Education Code, section 21107: "The county superintendent of schools shall examine each order on school district funds transmitted to him, in

Petitioner pleads that uncertainties in the year services are performed under the interdistrict agreements (i.e., the year of attendance by students), and which continue until after the beginning of the next school year, make impossible the settlement or payment of such accounts during the year of attendance,[5] and that therefore it should be permitted to use section 25541.5 special tax revenues raised in a school year, in payment for interdistrict services of the prior year. This position is without merit.

Section 25541.5 (fn. 2, *ante*) authorizes imposition of the special tax only "by such amounts as will produce the amount proposed to be expended . . . as shown by the budget . . . for the current fiscal year, less any unencumbered balances . . . at the end of the preceding fiscal year derived from the" special tax. The section then specifically directs that "If at the end of any school year there remains an unencumbered *balance* derived from the revenue of the increase in tax rate hereby provided, such balance shall be *used exclusively in* the *following* school *year for* the payment of any obligation incurred under the terms of an *interdistrict attendance* agreement *for such* school *year.*" (Italics added.) This language appears to demonstrate unmistakably the intent of the Legislature that section 25541.5 tax revenues be used first for special purpose obligations incurred in the year the funds are raised, and that any excess not required for such primary use may be used only to meet interdistrict attendance obligations incurred in the following school year. The use of such special tax revenues to pay obligations attributable to a prior school year is thus effectively forbidden.

Moreover, petitioner's argument that the uncertainties mentioned by it (fn. 5, *ante*) should permit it to use special tax revenues of a particular year in payment of interdistrict obligations incurred in the prior year, is shown to be a *non*

the order in which it is received in his office. If it appears that the order is properly drawn for the payment of legally authorized expenses against the proper funds of the district, and that there are sufficient moneys in the fund or funds against which the order is drawn to pay it, he shall indorse upon it 'examined and approved,' and shall, in attestation thereof, affix his signature and number and date the requisition and transmit it directly to the county auditor, in the order in which the order is received in his office.''

[5]E.g., until the close of a school year petitioner does not know the exact number of students from its district who attended the other junior colleges, nor does it know the exact expense per student until such expense has been calculated by a formula applied following the year of attendance.

*sequitur* by the circumstances here. As already related, for the 1963-1964 school year petitioner while levying the special tax at less than the authorized rate actually budgeted and raised (by both special and general taxes) the total sum of $1,647,500 for special purposes (chiefly interdistrict attendance), although the interdistrict attendance expenses for that year turned out to be only $1,401,183.11. It obviously was not embarrassed by lack of funds to meet its 1963-1964 interdistrict obligations nor does it claim to the contrary, but seemingly simply attempted to divert certain of the general purposes tax receipts from the special purposes for which they were raised pursuant to the 1963-1964 budget, and to replace them with special section 25541.5 revenues raised during the succeeding (1964-1965) school year. (Cf. §§ 17202, 20951-20953, 21001, 21051-21053, 21102, 21401-21402.)

Petitioner also suggests that sections 20201 et seq. authorize the levying of a special tax in any county in which there is no junior college, to pay the prior year's tuition charges of students from such county who attend junior college elsewhere, and that therefore petitioner should in like vein be permitted to levy its special tuition tax under section 25541.5 to meet the prior year's obligations under interdistrict attendance agreements. Suffice it to say that even if petitioner's construction of sections 20201 et seq. be correct, a point which we do not reach, nevertheless the Legislature has not undertaken to bestow upon junior college districts the authority which petitioner seeks to exercise with respect to its own interdistrict tuition tax receipts.

This conclusion renders it unnecessary to consider respondent's further contention that section 18 of article XI of the state Constitution[6] bars petitioner's attempted use of this year's tax receipts in payment of last year's interdistrict attendance obligations.

The alternative writ heretofore issued is discharged and the peremptory writ is denied.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Mosk, J., concurred.

---

[6]Article XI, section 18: "No . . . school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors. . . ."